SO ORDERED.

Dated: April 14, 2015

Eddward P. Ballinger Jr., Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

FOR MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Rachael Anne Earl - Chapter 7 |
| Case Number: | 2:13-bk-18751-EPB |
| Subject of Matter: | Objection to Claimed Homestead Exemption |
| Date Matter Taken Under Advisement: | February 18, 2015 |
| Date Matter Ruled Upon: | April 14, 2015 |

### Introduction

Before the Court is creditor Lund Cadillac, LLC's, ("Lund") objection to debtor's claimed homestead exemption. A hearing was held on February 18, 2015, and the matter taken under advisement. Having reviewed all the pleadings and considered arguments of counsel, the Court sustains Lund's objection.

1

**Facts**

Debtor filed, pro se, for Chapter 13 relief on October 28, 2013.[1] She listed two properties on her Schedule A as being owned in fee simple: a single family residence on Sunnyvale Avenue; and, a single family residence on Claiborne Avenue. She listed the Sunnyvale property with a value of $210,000.00 and a secured claim against it for $179,900.00; and, the Claiborne property with a value of $290,000.00 and a secured claim against it for "unknown." She claimed a homestead exemption of $155,675.00 under Arizona Revised Statute ("ARS") § 33-1101(A) on her Schedule C for unidentified real property valued at $290,000.00. Presumably she was claiming a homestead exemption in the Claiborne property, as it was the only property valued at $290,000.00 in her Schedules. Further, at her 341 hearing debtor testified that the Sunnyvale property was a rental property that generated $1,300.00 a month in rental income.

In January, 2014, Lund filed a motion to convert to a Chapter 7 on the ground that debtor's proposed plan was insufficient to pay creditors what they would receive under a Chapter 7. In particular, Lund pointed to the fact that there was approximately $30,000.00 in equity in debtor's Sunnyvale investment property, which a trustee could liquidate to substantial benefit of the creditors. By contrast, debtor's proposed plan would only net $6,091.20 to creditors. Lund also argued that debtor's true intent in filing bankruptcy was to save her Claiborne home, even though the Claiborne property had already been sold at a trustee's sale in 2010.[2] After a brief hearing at which the debtor did not appear, this Court converted the case.

Upon conversion, the Chapter 7 Trustee filed an objection to exemptions, arguing, *inter alia,* that debtor could not claim an exemption in the Claiborne property as she was not the title

---

[1] This was debtor's third Chapter 13 bankruptcy since 2010. See Case Nos. 2:10-bk-05650-RJH (dismissed at debtor's request) and 2:10-bk-27333-SSC (dismissed for failure to comply with trustee's recommendations or make plan payments).
[2] From 2010 until sometime in 2014, debtor pursued several different avenues to have the sale set aside.

2

owner of the property and had not been the legal owner of the property since January 15, 2010. This Court sustained the objection.  Less than a month later, debtor hired counsel and filed her amended schedules.  In her amended Schedule C, she claimed no homestead exemption at all, yet listed numerous items of exempt personal property (furniture, clothing, books, pictures, jewelry, automobile, food, and family pets) located at the Claiborne property.  The following month, debtor filed a Change of Address stating that effective August 13, 2014, debtor's new address was the Sunnyvale property.

Three months later the trustee filed a Notice of Trustee's Sale on the Sunnyvale property. Before the scheduled sale date and fourteen months after filing bankruptcy, debtor filed a second set of amended schedules and for the first time claimed a homestead exemption in the Sunnyvale property.  In those amended schedules, however, debtor still listed all her exempt personal property as being located at the Claiborne property, including all her clothing, food, and even her cats and a chicken.  Debtor also filed an objection to the sale, arguing that she had a valid homestead exemption in the Sunnyvale property.  Debtor and the trustee reached an agreement by which the trustee withdrew the Notice of Trustee's Sale.  Simultaneously, Lund filed its objection to debtor's claimed homestead exemption in the Sunnyvale property, giving rise to this current dispute.

## Discussion

The parties do not dispute that "[a]ny person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding $150,000 in value, any one of the following: . . . 1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides." A.R.S. § 33-1101(A)(1).  "Under the so-called 'snapshot' rule, bankruptcy

3

exemptions are fixed at the time of the bankruptcy petition." *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012)(quoting *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924)). The exemption must validly exist under Arizona exemption law as that law existed on the petition date. *See id.* at 1199; *In re Kim,* 257 B.R. 680, 685 (9th Cir. BAP 2000); *In re Gilbraith*, 523 B.R. 198, 203 (Bankr. D. Ariz. 2014); *In re Smith*, 515 B.R. 755 (Bankr. D. Ariz. 2014). Further, a debtor may amend his or her Schedule C pursuant to Bankruptcy Rule 1009(a) "'as a matter of course at any time before the case is closed' and without court approval." *Id*. at 173 (quoting *Martinson v. Michael (In re Michael),* 163 F.3d 526, 529 (9th Cir. 1998) and citing *Goswami v. MTC Distrib. (In re Goswami*), 304 B.R. 386, 292 (9th Cir. BAP 2003)). Debtor argues that because the law permits her to amend her exemption at any time, she may change her exemption at any time before the closing of the case, as long as she has a valid exemption under state law, citing *In re Gray*, 523 B.R. 170 (9th Cir. BAP 2014). For the reasons set forth below, the Court disagrees debtor currently possesses a valid homestead exemption.[3]

Lund's objection is properly resolved by reconciling application of the two principles set forth above -- that a homestead exemption is determined as of the petition date and that a debtor may amend his or her schedules to claim or change an exemption. Here, this application mandates that the Court recognize any homestead exemption claimed in an amended Schedule C that could have been legitimately claimed under state law *as of the petition date*.

---

[3] Debtor's reliance on *In re Gray, Schultz v. Mastrangelo,* 333 F.2d 278 (9th Cir. 1964) and *Myers v. Matley*, 318 U.S. 622 (1943) is misplaced. *Gray* presented the question of whether a court could disallow an exemption based on a finding of bad faith. And, while Lund makes such a bad faith argument, this Court agrees that under *Gray*, a court may not disallow an exemption as a remedy for a debtor's bad faith conduct. *Id*. at 173-75 (citing *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188, 1196-97, 188 L.Ed.2d 146 (2014)). Similarly, *Schultz* and *Myers* centered primarily on whether a debtor in bankruptcy may retain his homestead exemption when he records his homestead declaration post-petition but prior to sale. None of these cases were faced with the question here -- whether debtor had a valid exemption claim on the Sunnyvale property as of the petition date that she could subsequently claim in an amended Schedule C.

4

On the bankruptcy petition filing date, Arizona law authorized debtor to assert a homestead exemption in a home in which she resided. ARS 33-1101(A)(1). The exemption statute is liberally construed and does not necessarily require physical presence on a day-to-day basis, but the debtor must *intend* that the home be her residence. *In re Garcia*, 168 B.R. 403, 408 (D. Ariz. 1994). Upon filing bankruptcy, debtor had a clear, affirmatively-stated intent to reside at the Claiborne property, not the Sunnyvale property. She, in fact, lived at the Claiborne property (and had done so for nearly four years after the trustee's sale), asserted a homestead exemption in this realty and kept all her personal property at this location.[4]

Conversely, the docket record makes clear that as of the petition date, debtor had no real intention of residing at the Sunnyvale property. She had not maintained a residence there for over four years. Instead, she leased the Sunnyvale property to a third party. She only considered asserting a homestead exemption in the Sunnyvale property after she lost her various attempts to rescind the trustee's sale of the Claiborne property and the Chapter 7 Trustee sought to sell the Sunnyvale property.[5]

Additionally, by removing herself from the Sunnyvale property for more than two years, a presumption arose that debtor abandoned that property: "A claimant may remove from the

---

[4] One might argue that because the Claiborne property had been subjected to a trustee's sale prior to the petition date, it could not be used to provide debtor a legally recognized homestead exemption. But, debtor asserted the sale was invalid and filed multiple legal challenges to it. As of the petition date and for a year thereafter, debtor was steadfast in her claim that she was the rightful titleholder to the Claiborne property and that she intended to continue to reside at this location.

[5] Debtor readily acknowledges that her decision to reside at the Sunnyvale property was reluctantly made years after her bankruptcy petition filing date, admitting that only after "[d]ebtor learned that the sale of the Claiborne property would not be rescinded, she and her family *had no choice* but to move back to the Sunnyvale property." Debtor's Response to Lund Cadillac, LLC's, Objection to Homestead Exemption and Request for Hearing, docket 96 (emphasis added). Her perceived Hobson's choice does not evince the necessary clear intent to reside at the Sunnyvale property required by ARS 33-1101(A)(1). More importantly, allowing debtor's amendment, which is untethered to the initiation of her bankruptcy proceeding, would ignore the Supreme Court's holding in *White v. Stump* that exemptions are determined as of the petition date. *See also In re Cerchione*, 414 B.R. 540 (9th Cir. BAP 2009).

5

homestead for up to two years without an abandonment or a waiver of the exemption." ARS 33-1104(3). "Read in a vacuum, this sentence arguably means that, for up to two years, debtors can live somewhere other than their homesteads without being deemed to have abandoned their homesteads. And by negative implication, this sentence also could be read in isolation to mean that, after two years living elsewhere, debtors are deemed to have automatically abandoned their homesteads." *In re Calderon,* 507 B.R. 724, 732 (9th Cir. BAP 2014). While the *Calderon* court went on to explain that this abandonment language does not, in fact, result in an absolute bar, it does create a presumption that the debtor intended for her removal to be permanent:

> Once so understood, the statute is not particularly difficult to apply in bankruptcy cases. On the petition date, if the debtor has been living elsewhere for less than two years, only evidence of a clear intent of permanent removal will suffice to permit the bankruptcy court to find that the debtor has abandoned his homestead exemption under Arizona law. On the other hand, on the petition date, if the debtor has been living elsewhere for two years or more, then the debtor is presumed to intend for the removal to be permanent, and only evidence of a clear intent for the removal to be temporary will overcome that presumption.

*Id.* at 732. Debtor has not provided sufficient evidence to overcome the presumption that her removal was permanent.

While it may be correct to say that on the petition date debtor held a contingent interest in the Claiborne realty, the uncontested facts show that debtor was afforded the benefit of the homestead exemption she claimed.[6] Post-petition she was able to and did, in fact, attempt to set aside the earlier Claiborne property sale, in lieu of the trustee taking control of debtor's alleged property interest. Simply because debtor lost in those proceedings does not entitle debtor to a second bite at the apple. Debtor is not permitted to elect what amounts to a *de facto* alternative exemption (*i.e.*, an initial exemption granted with respect to one parcel, but with a caveat that if

---

[6] The eventual denial of debtor's Claiborne homestead exemption in 2014 occurred after debtor had abandoned her efforts to revest title to the realty in her name.

Case 2:13-bk-18751-EPB    Doc 104    Filed 04/14/15    Entered 04/15/15 07:48:08    Desc
Main Document    Page 6 of 7

there is a subsequent adverse legal declaration affecting the original designation, a replacement declaration of residence intention springs into effect and creates a new exemption).

      IT IS THEREFORE HEREBY ORDERED sustaining Lund Cadillac, LLC's, objection to debtor's claimed homestead exemption. Counsel for Lund shall lodge a form of order consistent with this decision.

7