UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

_____  )
                                              )
In re:                                        )
                                              )
RACHAEL ANNE EARL              CH: 7  )    2:13-BK-18751-EPB
                                              )
HEARING ON LUND CADILLAC'S OBJECTION TO )
HOMESTEAD EXEMPTION                           )
_____  )

                              U.S. Bankruptcy Court
                              230 N. First Avenue, Suite 101
                              Phoenix, AZ 85003-1706

                              February 18, 2015
                              1:44 p.m.

        BEFORE THE HONORABLE EDDWARD P. BALLINGER JR., Judge

APPEARANCES:

For the Chapter 7 Trustee:      Jonathan Charles Simon
                                LANE & NACH, P.C.
                                2001 East Campbell Avenue
                                Suite 103
                                Phoenix, AZ 85016


For Lund Cadillac, LLC:         Ryan J. Lorenz
                                CLARK HILL, PLC
                                14850 N. Scottsdale Rd. Ste. 500
                                Scottsdale, AZ 85254


For the Debtor:                 Allen D. Butler
                                LAW OFFICE OF ALLEN D. BUTLER PC
                                406 E. Southern
                                Tempe, AZ 85282

Proceedings recorded by electronic sound technician, Jennifer
Lowry; transcript produced by AVTranz.

**AVTranz**
www.avtranz.com · (800) 257-0885

1          THE CLERK:  In the case 13-18751, Rachel Earl.

2          THE COURT:  Oh yeah --

3          MR. SIMON:  Good afternoon, Your Honor.  Jonathan

4    Simon appearing on behalf of the Chapter 7 trustee.

5          THE COURT:  Hi.

6          MR. LORENZ:  Good afternoon, Your Honor, Ryan Lorenz

7    on behalf of Lund Cadillac LLC.

8          THE COURT:  Okay.

9          MR. BUTLER:  Good afternoon, Allan Butler on behalf

10   of the Debtor Rachael Earl.

11         THE COURT:  Well I looked over all the stuff you

12   filed, this is interesting.  Has there been any resolution?

13         MR. BUTLER:  No, not -- in -- for -- in the interest

14   of full disclosure, I had reached a settlement with the Chapter

15   7 Trustee that my client would pay a fixed amount.

16         THE COURT:  Okay.

17         MR. BUTLER:  But then this -- the creditor here has

18   raised issue for your determination, so --

19         THE COURT:  Right, well let me tell you what I read,

20   and so that way you can tell me either what I misunderstood or

21   why my thoughts are incorrect -- go ahead, did you have

22   something to say first?

23         MR. BUTLER:  Did you want to address me or --

24         THE COURT:  Well yeah, I guess, because it's probably

25   a question number one for the Debtor.  I've read the cases that

1   were cited and looked at some others.  And I realized that,

2   especially in this jurisdiction the idea of asserting

3   exemptions is very liberally construed in favor of the Debtor.

4   And I've read both the 9th Circuit cases and some recently from

5   this jurisdiction including, I think, Judge Curley's decision

6   from recently -- or at least it was fairly recent.  But it's --

7   the question I had is that in each of those case at -- on the

8   -- well let me make one further comment.  Even though the

9   assertion of the exemptions is liberally construed or applied

10  in favor of the Debtor, there also seems to be uniformity among

11  the appellate courts, at least in this jurisdiction that the

12  assert you answer the question of what exemptions could be

13  asserted on the petition date.

14          MR. BUTLER:  I don't think that In Re Gray requires

15  that, Your Honor.  I mean it seems to say you can amend --

16          THE COURT:  No, I agree.

17          MR. BUTLER:  And --

18          THE COURT:  I agree.

19          MR. BUTLER:  So let me follow up with --

20          THE COURT:  Sure.

21          MR. BUTLER:  -- round two, okay?

22          THE COURT:  Okay.

23          MR. BUTLER:  So I think what you have to look at

24  under Schultz versus Mastrangelo and Myers versus Matley, which

25  are -- one's a 9th circuit case, and the U.S. Supreme Court

1  case.  So the Chapter 7 Trustee is -- he has a rights of a

2  judgment credit, okay?  And so once you file it's he has the

3  rights of a judgment creditor.  But, he doesn't have any

4  additional rights, okay?  So if we had a judgment creditor out

5  there, if Lund Cadillac had a judgment against my client for

6  $50,000 or whatever -- any amount, okay, and my client owned

7  two pieces of property my client could designate which one was

8  her homesteaded property up to the date of sale.  That's what

9  the Arizona case law says.

10         So I think under the federal case law, you're going

11  to look to the state law to determine when can you assert that

12  objection.  And the Arizona case law is -- since about 1925,

13  has said you can assert that objection up to the moment that

14  the gavel falls.  So my client admittedly asserted it after the

15  bankruptcy was filed.  But if you're looking at the Arizona

16  case law, which my understanding is from even Myers versus

17  Matley, the U.S. Supreme Court case in 1943 if under state law

18  the declaration of homestead would be effective as against a

19  creditor to prevent a judicial sale of the property, you can

20  homestead it.  So that's my response.  As you looked at Arizona

21  law and you can declare that homestead up to the moment of the

22  judicial sale takes place.

23         THE COURT:  But that's in a separate universe from

24  the bankruptcy exemption.

25         MR. BUTLER:  Well I don't think so.  I think the way

1   I read Gray and the U.S. Supreme Court cases, and that they're

2   going to look at the state law to determine when you can claim

3   that exemption. And so there's no -- it's not a question of

4   when you file, and there's a number of cases that say you can

5   assert the exemption after you file. So if my client --

6         THE COURT: But don't those cases all deal with a

7   situation in which the Debtor says, I'm asserting the exemption

8   and I had -- even if wasn't living on the property, even if I

9   was at one case leasing it, my intention on the day that I

10   filed was, for example, to return to the property when the

11   lease hold ran. Or everything else. That I had a presence

12   sense intention on the day I filed to assert an exemption on

13   the following property?

14         MR. BUTLER: I understand that, but I also understand

15   that under Arizona case law my client owned the property on the

16   date of sale, and she could assert her exemption any time up to

17   the time of the judicial sale -- sheriff's sale. When the

18   sheriff says I've sold it to --

19         THE COURT: But you're saying that --

20         MR. BUTLER: -- Mr. Jones.

21         THE COURT: -- that if there's a pending sale under

22   state law, and then there's an intervening bankruptcy, you're

23   saying that does not affect the unfettered ability of your --

24   the Debtor -- after the filing of the bankruptcy, during the

25   pendency of the running to say I now assert an intention to

1 claim and exemption inconsistent with that that existed on the

2 day I filed my petition?

3         MR. BUTLER: That's the way I read the case law, Your

4 Honor, is that she can make that decision after she files. She

5 didn't have counsel when she filed, she --

6         THE COURT: Well I understand that.

7         MR. BUTLER: -- she was pro per, that whole thing --

8         THE COURT: I understand that.

9         MR. BUTLER: -- so you know --

10         THE COURT: Yeah, yeah.

11         MR. BUTLER: You know, I wish she would have. It

12 would have been a lot easier, but -- so I think when you read

13 the --

14         THE COURT: Well the facts of this case though now --

15         MR. BUTLER: Yeah, I understand.

16         THE COURT: -- are that on the day that she filed she

17 did have a present state -- a present intention to have a

18 homestead, but it wasn't in this property.

19         MR. BUTLER: It was -- she didn't own the property

20 that she allegedly homesteaded.

21         THE COURT: True, but her intention was I want to --

22 I'm going to get that back. I'm going to get that property --

23         MR. BUTLER: Well that was her hope, yes.

24         THE COURT: -- that I lost and my intention is -- on

25 the day I filed my intention is to get that property back and

1   to assert my homestead on that.

2           MR. BUTLER:  I agree with that.

3           THE COURT:  Okay, and so the question is, even though

4   the record's clear that that's -- those are the facts, does

5   Arizona law allow her to say after she's filed, "No, I've

6   changed my mind.  I now want to assert my exemption on the

7   other property" --

8           MR. BUTLER:  On the other property --

9           THE COURT:  -- I'll mix them up.

10          MR. BUTLER:  -- yes.

11          THE COURT:  Yeah, yeah.

12          MR. BUTLER:  Well when I read the Supreme Court

13  decision from 1943, the Schulz versus Mastrangelo 9th Circuit

14  decision, a 1964 they -- the Myers versus Matley that a

15  declaration of homestead is good as against the trustee,

16  they'll record it after filing of the petition, if under state

17  law the declaration of homestead would be effective against --

18  as against the creditor to prevent a judicial sale of the

19  property if made and recorded after levy, but before the sale

20  thereof.  So I understand the Court's dilemma.

21          THE COURT:  Well it's what Lund cites.  And they cite

22  In Re Kim that says that determinations and declarations are

23  made on the petition date.  And if you're right, then that

24  decision has no meaning.

25          MR. BUTLER:  Well I think in light of In Re Gray,

1    which says that the Debtor has a right to amend her exemptions

2    in the Court --

3            THE COURT:  Yeah, but that's not inconsistent with --

4    it's not inconsistent to say the Debtor can -- has liberal

5    amendments, if the amendments are consistent with conforming to

6    an intention that existed on the day the petition was filed.

7            MR. BUTLER:  Well I'm not sure I read that into In Re

8    Gray.  Okay?  I don't see that in that case where the Court

9    says that we're going to make that determination as of the date

10   of filing.  But I understand the facts of In Re Gray.  They had

11   this rental deposit which, you know, they could have, would

12   have, should have exempted so that's the facts in that case,

13   but I don't think the holding is limited to that.  They're

14   saying the Debtor can amend.  She did own the -- this property.

15   She had the right under Arizona law to declare it as her

16   homesteaded property any time up to the date of sale.  So she

17   could have done that out -- setting aside the bankruptcy code,

18   but I think under the Federal Bankruptcy Law, as I read it, you

19   have to look at the state law to make the determination as to

20   whether or not she had the right to do this. And the way I read

21   the state law she absolutely had the right to do this.

22           THE COURT:  But isn't the question what -- she

23   absolutely would have the right to do it, if there was no

24   bankruptcy, right?

25           MR. BUTLER:  Well the --

1          THE COURT:  It's just your position -- I understand

2    what you're saying.  But your position eliminates any adherence

3    to the proposition that exemptions are determined at the time

4    the petition is filed.  Except that you would say, well not

5    really because the exemption that existed at the time she filed

6    was that she could change it whenever she wanted prior to the

7    foreclosure sale.

8          MR. BUTLER:  Well the way I read --

9          THE COURT:  Yeah, I hear you.

10         MR. BUTLER:  -- the code and the applicable --

11         THE COURT:  Yeah, yeah, yeah.

12         MR. BUTLER:  -- federal law --

13         THE COURT:  I hear you.

14         MR. BUTLER:  -- that seems to be the -- I -- it --

15         THE COURT:  No, I hear you.

16         MR. BUTLER:  -- may not be the decision that we like,

17   okay, but I don't think you can reach any other rational

18   conclusion in light of the --

19         THE COURT:  Okay.

20         MR. BUTLER:  -- case law that's come down.

21         THE COURT:  Well I'm going to have to read it again.

22   I don't -- but I appreciate that.  And I now I understand your

23   position better, okay, thanks.  What's wrong with what he said?

24         MR. LORENZ:  At the outset, Your Honor, I think it's

25   an understatement to declare that what the trustee has in terms

1  of this property is status as a lien creditor.  This is

2  property of the estate, as was the declaration of ownership in

3  the Claiborne property.  The Debtor claimed to own two pieces

4  of real property.  However, whatever interest the Debtor owned

5  became property of the estate.  It's not the trustee claiming

6  the right to foreclose on a lien in this case, the trustee

7  would have the rights to sell it as the owner of the property.

8          THE COURT:  His point is that, I think the point on

9  which the Debtor lives or dies is the point that says that even

10 though you determine exemptions available to the Debtor on the

11 petition date, in light of the fact that the assertion of

12 exemptions is extremely liberally construed in favor of the

13 Debtor, and the fact that you're required to look at state law

14 here, the exemption that existed on the date of the petition

15 for this Debtor was the ability to switch and to change

16 exemptions up until a foreclosure sale.

17         MR. LORENZ:  The administrative problem with that

18 interpretation of the code's deference to Arizona State law on

19 exemptions and the homestead exemption in particular is any

20 debtor that owns two pieces of property in which there are some

21 equity can simply continue jumping from the right foot to the

22 left as soon as the trustee notices out a sale.  And we'd be in

23 this endless cat and mouse game where the trustee tries to sell

24 one piece of property or the other.  The Debtor in this case,

25 although not represented by counsel at the outset declared --

1          THE COURT:  Made a mistake.

2          MR. LORENZ:  Declared that she was going to reside at

3    and did reside for a long time --

4          THE COURT:  Oh yeah.

5          MR. LORENZ:  -- at the Claiborne property, not the

6    Sunnyvale property.  Which raises another concern which is

7    where are the rents for the Sunnyvale property that should

8    accrued to the benefit of the estate while this case has been

9    pending.  Another problem is that the whole premise of

10   converting this case from Chapter 13 to Chapter 7 was because

11   there was equity available in the Sunnyvale property that could

12   benefit creditors.  And so we were the -- we moved for

13   conversion of this case on that premise.  We employed a real

14   estate agent to come up with a comp analysis showing the Court

15   that there was equity in this property that would be helpful to

16   creditors.  The Debtor didn't object then to the notion that

17   there was equity in the Sunnyvale property, rather when the

18   sale was noticed out by the trustee, I believe about five

19   months after the date of conversion, that's when the Debtor

20   decided to suddenly relocate and declare the Sunnyvale property

21   as her homestead.  That's not consistent with the notion that

22   debt -- that a Debtor have an opportunity to declare a

23   homestead where they live, that's an attempt to rescue one's

24   self from a poor decision of deciding this is where I'm going

25   to live though, as --

1          THE COURT:  But the facts are the Debtor asserted her

2    right to a homestead that was ineffectual.  She couldn't have a

3    homestead in the property she listed at the time she made that

4    decision, that selection, right?

5          MR. LORENZ:  I don't think the original schedule C

6    asserted a homestead exemption in the Claiborne property.

7          THE COURT:  So she had none?

8          MR. LORENZ:  And though the -- while the Debtor

9    claimed that to be her residence, she was continue to claim and

10   even litigate a claim of ownership to that property.  So you

11   could say that she had inchoate right that she was trying to

12   establish through state court litigation.  There's there was an

13   adversary case filed in a previous bankruptcy filing.  So the

14   Debtor was trying --

15         THE COURT:  At the time the petition was filed and

16   she asserted her residency in that property, I keep mixing them

17   up, was there any proceeding pending by which she was

18   attempting to obtain title?

19         MR. LORENZ:  Yes.  Yes.

20         THE COURT:  What was that?

21         MR. LORENZ:  I believe it was a series of state court

22   lawsuits -- there were at least two state court lawsuits in

23   which the Debtor sued her creditor -- or sued the foreclosing

24   lender to claim that the foreclosure was invalidly conducted.

25         THE COURT:  So just -- and I just want to summarize.

1  So the status quo at the time she asserted her residency or her

2  intention with respect to the -- that property, she was at the

3  same time asserting her ownership right in it in another forum?

4       MR. LORENZ:  Yes.

5       THE COURT:  Okay.

6       MR. LORENZ:  Which as soon as that ran its course,

7  and I believe even through today, there's a pending order

8  clarifying the automatic stay that the foreclosing lender is

9  not subject to the automatic stay in this bankruptcy case.

10      THE COURT:  Because they own the property --

11      MR. LORENZ:  It's --

12      THE COURT:  -- right?  Because there's no ownership

13 interest that court found?

14      MR. LORENZ:  It was a stay clarification motion --

15      THE COURT:  I got you.

16      MR. LORENZ:  To be sure.

17      THE COURT:  I got you.  Okay.

18      MR. LORENZ:  But the order hasn't even -- hasn't yet

19 been entered.  Yes, it's true that in previous state court

20 litigation post foreclosure that the Debtors were subject to a

21 judgment for forcible detainer.  I believe even a writ of

22 restitution was issued, but that's where the issue ended with

23 the beginning of this bankruptcy case.

24      So the Debtor has been claiming in many different

25 forum that she still owns and has a right to acquire title to

1   the Claiborne property.  It was only after the trustee noticed

2   out a sale that suddenly she moved.  And that's not -- yes,

3   it's true that we want to liberally construe the exemptions in

4   favor of a homeowner, but in this case there's been no

5   accounting as to what has become of that estate property.  And

6   the trustee should be permitted to move forward with the sale.

7          THE COURT:  Okay, I got you.

8          MR. LORENZ:  Well I guess one final item.

9          THE COURT:  Sure.

10         MR. LORENZ:  The Gray case I think is

11  distinguishable.  It's heavily relied upon by the Debtor.  The

12  Gray case was a "Gotcha" case where the Debtor said, "Well that

13  was prepaid rent and I forgot to exempt it."  And then the

14  amendment to that Debtor's exemption sort of cleaned that issue

15  up.  Factually there was not a problem with that exemption, and

16  in fact the case was remanded from the BAP to determine any

17  factual issues consistent with the notion that the Court can't

18  take away a Debtor's exemption.  But by the same token, Your

19  Honor, the Debtor shouldn't be allowed to take property back

20  from the estate and the trustee.

21         THE COURT:  Well the cases seem to lean -- fall over

22  themselves trying to give the Debtor flexibility, or you may

23  more than flexibility, and they also seem, some may say

24  "parental" in respect to how they treat Debtors' assertion of

25  exemptions.  Here there's a situation whether the Debtor

1  asserted residency and claimed ownership that turned out to be

2  incorrect.  At the time she said I'm going to have this

3  residency, and I want this property. She didn't know later on

4  that she was going to lose.  And so is the bankruptcy court so

5  paternal that it says we'll give you another shot?  And I think

6  the Debtor's counsel's view is, "Yeah, that's Arizona law".

7  And you're saying no because that would be a situation that

8  creates havoc, as you -- that wasn't your word -- where the

9  Debtor could just assert/change, back and forth and back and

10 forth.  When are you held accountable?  And I think if I ask

11 that, Debtor's counsel -- he'll give me the date, and that is

12 the date when you're going to close the case.

13         MR. LORENZ:  I agree that there's a paternalistic

14 possibility, but as to this property, if the Debtor filed

15 everything she filed in bankruptcy court and in various state

16 court -- I believe also in the court of appeals, she filed all

17 that in good faith, and felt that she was indeed the owner of

18 the property, and that claim had to be defended by a lender who

19 wanted to protect its foreclosure, that was the Debtor's

20 choice.  And in going to great lengths to demonstrate

21 ownership, she simply overlooked the fact that she had a rental

22 property, an investment property not occupied by the Debtor and

23 not accounted to the estate for rents or the value thereof.

24 And that's the problem in this case.

25         THE COURT:  Okay, thanks.  Did you have anything else

1  you want to add?  I'm going to take it under advisement because
2  I want to read a couple of cases, anyway.
3            MR. BUTLER:  Just one thing, Your Honor -- a couple
4  of things.  One is the order that converted to Chapter 7 was
5  not based on Movant's motion.  It was based on her failure to
6  file tax returns filed by the Chapter 13 trustee who filed the
7  order.  So it wasn't -- didn't have anything to do with their
8  motion as far as I can see.  Secondly, as to the alleged rents
9  received, in discussing the matter with my client, the rents
10 were all used to pay the mortgage on the second property --
11           THE COURT:  Separate issue, anyway.
12           MR. BUTLER:  Separate issue.  I don't think it --
13           THE COURT:  It's not something --
14           MR. BUTLER:  -- applies --
15           THE COURT:  -- that's going to be having any input
16 here.
17           MR. BUTLER:  I don't think it does either.
18           THE COURT:  But there is one thing that -- I mean
19 what Lund says is, look this is an instance where the Debtor
20 comes in and files a bankruptcy and unequivocally asserts
21 ownership rights, the ability to reside in, and to assert her
22 claims on one piece of property, litigates it to its
23 conclusion, loses, and then says, "Well now I'm going to have a
24 new homestead."  And I think your position is, "Yeah, but
25 Arizona law lets that happen."

1      MR. BUTLER:  Well if you look at Arizona law, let's

2 just set aside bankruptcy for just a minute, I'm right.  I mean

3 I can do all of those things, and then decide I don't have this

4 property anymore.  I've got a judgment creditor out there who

5 is prepared to foreclose --

6      THE COURT:  Granted, granted, but --

7      MR. BUTLER:  -- you know, take my property.

8      THE COURT:  -- but it is a big difference there's a

9 bankruptcy, because now you have a new stakeholder, and a new

10 person that's going to get the property if you're wrong.

11 Instead of it being you now can go litigate, litigate, litigate

12 and come back, it's going to be if we say no then as your

13 opposing counsel points out, the benefit -- the value of that

14 property goes to pay unsecured creditors or others.

15      MR. BUTLER:  Which is -- the value of the property is

16 pretty much zero after --

17      THE COURT:  Well but I have to --

18      MR. BUTLER:  -- the --

19      THE COURT:  -- pretend like there's something there,

20 because why would you all be here.

21      MR. BUTLER:  Anyway --

22      THE COURT:  There's enough value to have two lawyers

23 -- three lawyers.

24      MR. BUTLER:  Yeah, well, anyway.  I think the Court

25 understands our position.

1          THE COURT:  Okay, I got it.  It's understand

2     advisement.  Thanks a lot.

3          MR. BUTLER:  I appreciate your --

4          THE COURT:  Sure.

5          MR. BUTLER:  -- inquiries.

6          THE COURT:  It was fun.  Yeah, it was fun.

7          MR. BUTLER:  All right.

8        (Proceedings Concluded)

9

10       I certify that the foregoing is a correct transcript from

11    the record of proceedings in the above-entitled matter.

12

13    Dated: September 2, 2015

14                                      AVTranz, Inc.
                                        7227 N. 16th Street #207
15                                      Phoenix, AZ  85020

16

17

18

19

20

21

22

23

24

25